UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH T. JARZEMBEK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-1796 |
| | ) |
| COUNTY OF ERIE, MARNI BOGART, | ) |
| and JOHN DOE, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**
**(Doc. 2)**

Plaintiff Joseph T. Jarzembek, proceeding pro se, sued Defendants County of Erie, Marni Bogart, and John Doe in Erie County Supreme Court on November 23, 2020. Defendants removed the case to this court on December 7, 2020. (Doc. 1.) Plaintiff brings a claim under 42 U.S.C § 1983 for deprivation of his procedural due process rights, and claims under state tort law for intentional and negligent infliction of emotional distress. (Doc. 1 at 13–18.) Defendants have filed a motion to dismiss the Complaint. (Doc. 2.)

**Background**

The Complaint alleges the following facts.[1]

Plaintiff Jarzembek is an attorney licensed to practice law in the state of New York. (Doc. 1 at 13 ¶ 3.) Plaintiff worked for the Erie County Department of Social Services for nearly twenty-five years, and also served as an Assistant Erie County Attorney for nearly four years. (*Id.*) Defendant Bogart was the Director of Legal Affairs for the Department in 2019 (*id.* at 14

---

[1] The court declines to consider facts alleged for the first time in Plaintiff's "Opposing Declaration," submitted alongside Plaintiff's response to the pending motion. (Doc. 5.)

¶ 14), and Defendant Doe is an unnamed employee or agent of the County of Erie (*id.* ¶ 6). In March 2019, Defendants wrote and published a document ("the Memorandum") about Plaintiff's allegedly deficient legal abilities. (*Id.* ¶ 15.) Plaintiff left his employment as Assistant Counsel at the Department in May 2019. (*Id.* at 14 ¶ 13.)

The Memorandum is not attached to the Complaint, but the Complaint contains the following objections to the allegedly defamatory statements contained in the March 25 memorandum:

> 15. First upon information and belief plaintiff's actions with the physician in the S case were not deficient in that he as an officer of the court properly spoke directly to the physician's lawyer prior to the court date since that medical witness was represented by counsel.
>
> 16. Secondly, upon information and belief, Defendants' comments regarding what plaintiff did at a conference on February 27 2019 were misleading, libelous and defamatory. Upon information and belief plaintiff spoke to a representative in defendant Bogart's office early that morning and informed her that he had a very busy court calendar that morning and that he would come to the meeting once the calendar was completed. Upon information and belief Plaintiff did not stare outside the window but instead conscientiously listened to the discussion that occurred on that date at the meeting.
>
> 17. Third, upon information and belief, contrary to the libelous statements included in the March 25 memorandum, caseworkers like respondents are not generally permitted to appear in pretrial conferences with judge's law clerks and respondent's counsel.
>
> 18. Fourth upon information and belief, defendant's statements in the memorandum that the grandparent's attorney had no standing in February 2019 are false, libelous and defamatory. Upon information and belief grandparent's counsel had standing to make arguments.
>
> 19. Fifth, upon information and belief, defendants prepared a legal defamatory document claiming that the plaintiff was responsible for sending files from a judge to a hearing officer.
>
> 20. Sixth, upon information and belief some of the cases that were scheduled in Part 13 in January 2019, defendants prepared a defamatory statement knowing that many cases had already been scheduled for January 2019. Before a vertical prosecution plan had been implemented in December 2018.

(Doc. 1 at 14–15.)

Plaintiff contends that the contents of the Memorandum "were false, defamatory and libelous," were known to be such to Defendants, and were written with malicious intent to harm Plaintiff. (*Id.* at 15 ¶ 21.) Plaintiff alleges that, as a consequence of Defendants' actions, he "has been held up to public contempt, ridicule, disgrace and prejudice," suffered mental anguish and injured business reputation, and lost the esteem and respect of friends and the public generally. (*Id.* at 16 ¶ 24.)

The Complaint identifies three causes of action: a claim under § 1983 for the deprivation of Plaintiff's procedural due process rights (*id.* ¶¶ 26–30); a claim for negligent infliction of emotional distress under state law (*id.* at 17 ¶¶ 32–34); and a claim for intentional infliction of emotional distress under state law (*id.* ¶¶ 36–38). On or about June 22, 2019, Plaintiff delivered a notice of claim to Defendants. (*Id.* at 14 ¶ 8.) Defendants have attached a copy of the notice of claim to their reply to Plaintiff's opposition to the motion to dismiss. (*See* Doc. 6-1.) A hearing under N.Y. Gen. Mun. L. § 50-h was held in May 2020. (Doc. 1 at 14 ¶ 10.)

## Analysis

I.  **Standard of Review**

To survive such a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the court accepts all plausible allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff, *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016), "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Empire Merchants, LLC v. Reliable*

*Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The court will grant a motion to dismiss only where "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014) (per curiam) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

**II.     Section 1983 Claim**

Section 1983 creates a federal cause of action for challenging the deprivation of constitutional rights by a "person" acting under color of state law. 42 U.S.C. § 1983; *Monroe v. Pape*, 365 U.S. 167, 186 (1961). A plaintiff who has been deprived of his constitutional rights may seek damages under § 1983 from officials who caused that deprivation while acting in their individual capacities, and against municipalities where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). An official-capacity suit for damages against a state or local official is properly treated as a suit against the state or municipality, *Hafer v. Melo*, 502 U.S. 21, 25 (1991), and may be dismissed for redundancy, *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). Where a complaint does not specify whether the plaintiff sues an official in her personal or official capacity, "'[t]he course of proceedings' . . . typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)). A request for punitive damages generally implies that the plaintiff sues the official in her individual capacity, because punitive damages are not available against a municipal defendant. *See Graham*, 473 U.S. at 167 n.13.

Because the Complaint does not specify the capacity in which Plaintiff sues Defendants Bogart and Doe but includes a request for punitive damages, the court construes Plaintiff's § 1983 claim against Defendant Bogart as an individual-capacity claim.[2] The court considers whether the Complaint sufficiently states a claim under § 1983 against Individual Defendants in their personal capacities or against the County of Erie. A common requirement of both claims is that Plaintiff has suffered a constitutional deprivation.

The Complaint alleges that Defendants violated Plaintiff's constitutional right to procedural due process. To prevail on this type of claim, a plaintiff must establish that "a liberty or property interest [] has been interfered with by the state," and that "the procedures attendant upon that deprivation were constitutionally [in]sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Liberty and property interests may arise from the Due Process Clause itself or from state law. *Id.* Here, the Complaint alleges that Defendants violated Plaintiff's procedural due process rights when they "impair[ed] plaintiff's property interest" in his law license by defaming Plaintiff and causing injury to his reputation. (Doc. 1 at 16 ¶¶ 24, 27–28.)

Generally, "[a] free-standing defamatory statement made by a state official about an employee is not a constitutional deprivation." *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996). However, one exception to this rule is the "stigma plus" procedural-due-process claim, which arises when a public employer terminates an employee and publicly charges him with behavior such as illegality, dishonesty, immorality, or incompetence that "deprives h[im] of the 'freedom to take advantage of other employment opportunities.'" *Id.* (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972)). Although the

---

[2] To the extent the Complaint states an official-capacity claim against Defendant Bogart, that claim is subject to dismissal as duplicative of Plaintiff's claim against the County. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)

Complaint characterizes the liberty or property interest at stake in various ways,[3] reading the Complaint in its entirety suggests that Plaintiff brings his § 1983 claim under a "stigma plus" theory. (*See* Doc. 1 at 15–16 ¶¶ 15, 23–24 (alleging defamatory and stigmatizing acts in the course of terminating Plaintiff's employment); *id.* at 16 ¶¶ 24, 27–28 (describing the effect of such actions on Plaintiff's ability to practice law); *see also* Doc. 4 at 6 (characterizing Defendants' actions as infringing a liberty or property interest via their adverse effect on the value of Plaintiff's law license).)

To prevail on a stigma-plus claim, a plaintiff must establish that his employer's statements implicate his liberty interest his freedom to pursue employment. The Second Circuit has explained that

> governmental allegations of professional incompetence do not implicate a liberty interest in every instance. Such allegations will support a right to a name-clearing hearing only when they denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession.

*Donato*, 96 F.3d at 630–31. Generally, a plaintiff "is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004). A plaintiff must also prove that the "stigmatizing statements were made public." *Id.* However, "[t]his requirement is satisfied where the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers." *Donato*, 96 F.3d at 631 (internal citations and quotation marks omitted).

---

[3] For instance, the Complaint alleges that Defendants violated "plaintiff's right to speak freely, plaintiff's property interest in his law license, and plaintiff's right to due process under law." (Doc. 1 at 16 ¶ 27.)

6

As a type of procedural due process claim, "a stigma-plus claim enforces a limited but important right: the right to be heard 'at a meaningful time and in a meaningful manner.'" *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). "[T]he availability of adequate process defeats a stigma-plus claim." *Id.* Where a plaintiff successfully proves a stigma-plus claim, due process requires he be afforded a post-deprivation opportunity to clear his name. *Patterson*, 379 F.3d at 330. However, if the government actor charged with making the adverse employment decision "is a high-ranking [state] official with 'final authority over significant matters,' an individual is entitled to a hearing *prior* to a "stigma-plus" deprivation of a liberty interest. *Velez v. Levy*, 401 F.3d 75, 91–93 (2d Cir. 2005).

The court concludes that the Complaint sufficiently alleges two of the three elements necessary to establish a deprivation of a liberty interest under a stigma-plus theory. The Complaint alleges that Defendants produced a document containing defamatory statements that adversely reflect on Plaintiff's capacity as an attorney. (*See* Doc. 1 at 14–15 ¶¶ 15–20.) Plaintiff "strongly disputes the accuracy of the [] comments, another showing required for a plaintiff to state a liberty claim." *Donato*, 96 F.3d at 632. The Complaint alleges that the statements precipitated Plaintiff's termination of employment at Erie County Department of Social Services (*id.* at 14 ¶¶ 13, 15), and that this stigma-plus has subjected Plaintiff to "public contempt, ridicule, disgrace and prejudice"; "great mental pain and anguish"; and "irreparable injur[y] in good name[] and business reputation, and social standing" (*id.* at 16 ¶ 24). Together, these allegations sufficiently state that Defendants made stigmatizing statements in connection with Plaintiff's termination or cessation of employment and sufficiently raise the falsity of those statements.

However, the Complaint's allegations regarding publication are too conclusory to satisfy the Rule 12(b)(6) standard. Despite various references to the "publication" of the document (*e.g.*, *id.* at 15 ¶¶ 22–23), the Complaint does not allege that Defendants made the memorandum available to anyone besides plaintiff. To qualify as actionable "publication," an allegedly "defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest." *Velez*, 401 F.3d at 87. Measured against this standard, the Complaint's conclusory allegations of "publication" are insufficient to establish this necessary element of a stigma-plus claim.

Moreover, even if the Complaint sufficiently alleged a deprivation of Plaintiff's liberty interest, the Complaint also falls short at the second step of the procedural due process inquiry. Although the Complaint alleges that Plaintiff received a § 50-h hearing after his termination, it does not contain any allegations regarding deficiencies in that process. (Doc. 1 at 14 ¶ 10.) Nor does the Complaint contain any allegations suggesting that the county employees who ordered Plaintiff's termination from employment were of such "high-ranking" status as to entitle Plaintiff to a pre-deprivation hearing. *See Velez*, 401 F.3d at 91–93.

Because the Complaint does not plausibly allege that Plaintiff's termination and post-termination hearing deprived him of his liberty interest without due process, Plaintiff's stigma-plus claim fails against all Defendants, and must be dismissed.

### III. State-Law Claims

Having dismissed the claim over which it had original jurisdiction, the court determines that the factors enumerated in 28 U.S.C. § 1367(c) weigh in favor of exercising supplemental jurisdiction over Plaintiff's state-law claims. These claims arise from the same events as the

federal claim, and do not raise novel or complex issues of state law. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966). Consequently, the court's exercise of supplemental jurisdiction is justified. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

    A.    **Negligent Infliction of Emotional Distress – Exclusive Remedy**

The Complaint alleges that Defendants harassed Plaintiff from March 25, 2019 (the alleged publication date of the defamatory statements) until May 2019 (the date Plaintiff left employment at the Department), and that Defendants' negligence caused Plaintiff to suffer "extreme emotional psychological and mental distress and anxiety." (Doc. 1 at 17 ¶¶ 32–33.) In their motion to dismiss, Defendants argue that N.Y. Workers' Comp. Law § 29(6) bars Plaintiff's negligence claim.

Section 29(6) provides that "[t]he right to compensation under this chapter [N.Y. Workers' Comp. Law], shall be the exclusive remedy to an employee . . . when such employee is injured . . . by the negligence or wrong of another in the same employ." N.Y. Workers' Comp. Law § 29(6). The Second Circuit has held that § 29(6) bars common-law negligence claims against an employer based on a co-worker's harassment allegedly creating a hostile work environment. *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997); *see also Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001). Plaintiff's opposition memorandum does not identify countervailing caselaw, and Plaintiff's jurisdictional argument is unavailing. (*See* Doc. 4 at 9.) This court has original jurisdiction over Plaintiff's claim under § 1983, and supplemental jurisdiction over his state-law tort claims. New York tort law controls this court's adjudication of Plaintiff's negligence claim. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Because Plaintiff sues his employer and former co-employees for emotional distress arising from alleged harassment and negligence, Plaintiff's claim for negligent infliction of

emotional distress is barred by N.Y. Workers' Comp. Law § 29(6), which provides the exclusive remedy against the employer.

B.     **Intentional Infliction of Emotional Distress**

Plaintiff's third cause of action alleges that Defendants "intended to cause or disregard[ed] a substantial probability of causing plaintiff severe emotional intentional psychological and mental distress" by way of their "extreme and outrageous conduct as alleged [in the Complaint]." (Doc. 1 at 17 ¶¶ 36–37.) Defendants respond that Plaintiff's claim is barred against the County as a matter of public policy, and that the Complaint fails to state a claim against Individual Defendants. (Doc. 2-2 at 13–14.)

In New York, a plaintiff bringing a claim for intentional infliction of emotional distress (IIED) must establish "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). New York courts have held that public policy bars IIED claims against government entities. *E.g.*, *Rapuzzi v. City of New York*, 186 A.D.3d 1548, 1550, 131 N.Y.S.3d 76, 79 (N.Y. App. Div. 2020); *Boyle v. Caledonia-Mumford Cent. Sch.*, 140 A.D.3d 1619, 1621, 34 N.Y.S.3d 548, 550 (N.Y. App. Div. 2016). For this reason, Plaintiff's claim against the County must be dismissed. The court considers whether the Complaint states an IIED claim against the Individual Defendants.

New York courts have interpreted the first element of an IIED claim to require conduct so "extreme and outrageous . . . to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983); *Chanko v. Am. Broad. Cos. Inc.*, 49 N.E.3d 1171, 1179

(N.Y. 2016) (holding that conduct "likely [to] be considered reprehensible by most people . . . was not so extreme and outrageous as to satisfy our exceedingly high legal standard" from *Murphy*). The allegations in the Complaint do not meet this standard. Plaintiff alleges that Defendants "harassed" him, but does not provide additional details on the alleged harassment. The Complaint also fails to identify with any specificity the contents of Defendants' allegedly defamatory statements, and the court cannot conclude, from the Complaint's limited factual allegations, that the alleged defamation rose to the *Murphy* standard of extreme and outrageous conduct. Because the Complaint does not plausibly allege that Defendants engaged in "extreme and outrageous" conduct, Plaintiff's claim for IIED must be dismissed against Individual Defendants, too.

IV.  **Whether Plaintiff Should Be Allowed to Amend his Complaint**

Plaintiff has requested leave to amend the complaint. (Doc. 4 at 11.) Fed. R. Civ. P. 15(a)(2) provides that the court "should freely give leave [to amend] when justice so requires." The Second Circuit has held that a court should not dismiss a pro se plaintiff's complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). However, a court need not grant leave to amend where better pleading will not cure the complaint's deficiencies. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). In addition, "under certain circumstances, a litigant's experience and knowledge may [] justify complete withdrawal of solicitude" for pro se litigants, including when a practicing attorney represents himself. *Tracy v. Freshwater*, 623 F.3d 90, 103 (2d Cir. 2010).

Better pleading could not cure Plaintiff's claim for negligent infliction of emotional distress, because New York law bars such claims against employers and co-employees. In

11

contrast, it is feasible that improved pleading could salvage Plaintiff's claims for IIED and stigma-plus deprivation of procedural due process. Plaintiff's opposing declaration contains newly articulated factual allegations regarding Plaintiff's § 50-h hearing and experience of harassment that supplement the operative Complaint's deficient pleading. (*See* Doc. 4 at 7, 10.) Because the opposing declaration alleges facts which, if adequately articulated and incorporated into an amended pleading, could state a plausible claim under § 1983 or under state law for IIED, the court will grant Plaintiff leave to amend his complaint.

## Conclusion

Defendants' motion to dismiss (Doc. 2) is GRANTED IN PART and DENIED IN PART. The motion is granted insofar as the Complaint fails to state a claim for negligent infliction of emotional distress. The motion is denied insofar as it seeks a dismissal with prejudice of the claims for IIED and deprivation of procedural due process.

Plaintiff is granted leave to amend. Any Amended Complaint must be filed by July 1, 2021. Failure to so amend will result in dismissal with prejudice of Plaintiff's § 1983 and IIED claims.

Dated this 25th day of May, 2021.

Geoffrey W. Crawford, Judge
United States District Court